No. 2--00--1023

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

WILLIAM M. FRANZ,               ) Appeal from the Circuit Court

                                ) of McHenry County.              

Plaintiff-Appellee,        )     

                                )

v.                              ) No. 99--LA--187
         

                                ) 

CALACO DEVELOPMENT CORPORATION, )                  

and NUNZIO CASALINO,            ) Honorable

                                ) Maureen P. McIntyre,

Defendants-Appellants.     ) Judge, Presiding.

_________________________________________________________________

JUSTICE McLAREN delivered the opinion of the court:

Defendants, Calaco Development Corp. and Nunzio Casalino, brought this interlocutory appeal from an order granting a preliminary injunction in favor of plaintiff, William M. Franz.  We reverse.

This action began with the filing of plaintiff's complaint for breach of contract and breach of fiduciary duty against defendants.  Plaintiff was a limited partner in an entity known as Calaco Limited Partnership.  Defendant Calaco Development Corp. was the general partner, and defendant Nunzio Casalino was the chief operating officer.  The purpose of the limited partnership was to develop and sell vacant lots of land for the construction of single-family residences and town homes in a development known as Wedgewood.  

Plaintiff's complaint alleged that defendants breached the partnership agreement by selling vacant lots of land in the development to an entity known as the Villas of Wedgewood, an entity affiliated with Casalino, without the written consent of plaintiff as a limited partner and for prices less than set forth in the partnership agreement.  As a result, plaintiff claims that he, as a limited partner, lost profits in excess of $1 million. After defendants filed an answer to the complaint, affirmative defenses, and a counterclaim against plaintiff, plaintiff filed a motion for a preliminary injunction.  The motion asserted that the terms of the partnership agreement provided that plaintiff was to receive 33.5% of the profits from the partnership, projected at  $5 million to $8 million.  The motion further alleged that the partnership agreement prohibited the general partner, Calaco, from selling any of the lots to related parties without the written consent of 50% of the limited partners.  Plaintiff asserted that, in violation of the partnership agreement, Calaco sold lots to defendant Casalino and other third parties at a discounted price of $40,000.  As a result, plaintiff claimed irreparable harm in that the partnership assets would be depleted and insufficient funds would remain in the partnership to satisfy a judgment in plaintiff's favor.  Plaintiff's motion sought a preliminary injunction prohibiting defendants from selling, conveying, or otherwise transferring any residential lots in the Wedgewood development pending a hearing on a motion for a permanent injunction. 

An evidentiary hearing was conducted on plaintiff's motion for a preliminary injunction.  In lieu of a transcript from the hearing, the parties have provided a bystander's report pursuant to Supreme Court Rule 323(c).  166 Ill. 2d R. 323(c).  The report indicates that plaintiff, defendant Casalino, and Frederic Franz were called as witnesses.  

Plaintiff testified that he and his brother, Frederic Franz, were the owners of the Wedgewood property since 1961.  Three contracts for the sale of the property did not close.  Plaintiff's attempts to sell or develop the property failed.  In 1990, plaintiff entered into a partnership agreement for the development of the Wedgewood property.  Under the partnership agreement, plaintiff and his brother would provide the Wedgewood land, valued at $3 million.  Calaco was to contribute $1 million due at closing.  A schedule set forth payment of the remaining sum of $2 million to plaintiff and his brother.  Under the agreement, plaintiff and his brother were limited partners and were to receive 50% of any profits from the development.  Calaco was to act as general partner and was responsible for the day-to-day sales and marketing of the development.

Plaintiff was shown two exhibits identified as contracts for deed for lots from Calaco to Casalino and Sebastian Lorenzo.  Plaintiff testified that he believed his own signature and that of his brother were required because the partnership agreement prohibited the selling of a group of lots to defendants or entities related to defendants without the written consent of 50% of the limited partners.  Plaintiff denied that he consented in writing or orally to sell lots to defendants or related entities for terms other than those set forth in the partnership agreement.   

In 1996, plaintiff learned Casalino was selling lots to related entities contrary to the terms set forth in the partnership agreement and without plaintiff's written consent.  Plaintiff was shown a number of closing statements that identified the seller as Villas of Wedgewood, an entity owned by Casalino that built villas or town homes on lots in Wedgewood.

Under the terms of the partnership agreement, plaintiff was to receive a share of the profits of the Wedgewood development.  Since the inception of the partnership, he did not receive any profits or distribution from defendants other than the repayment of his share of the $3 million land contribution.  

Plaintiff reviewed Casalino's plan for the termination of the partnership.  He disagreed with the assessment that there would be little, if any, profit to distribute to the partnership.  Based on his own calculations, plaintiff estimated that defendants made a profit of either $645,435 or $1,316,794 by selling villa lots to related entities, depending on the land valuation ratio used.  Contrary to defendants' assessment of profits, plaintiff's estimate of profits was slightly less than $3 million.  

Frederic Franz was called to testify next.  He admitted that he had very little knowledge of the arrangement set forth in the partnership agreement because he relied on his brother, an attorney, to prepare the agreement.  He signed the partnership agreement at his brother's direction.

In 1991, Frederic Franz was advised by Casalino that the lots were not selling at the price set forth in the partnership agreement and would have to be reduced.  He attended a meeting at plaintiff's law office where Casalino complained that the price of the lots was too high, that they would not sell to other builders or developers, and that his construction company would not be able to make a profit buying the lots and building town homes unless the selling price was reduced to $40,000.  

Frederic Franz admitted that the limited partners had been paid the balance owed to them by the partnership for their contribution of land to the project and that they were fortunate to receive these payments given the inability to sell lots to anyone other than the Villas of Wedgewood.  He denied signing any  document authorizing the sale of lots to entities related to defendants. 

The last witness was Casalino.  He testified that there was difficulty selling both the villa and single-family lots in Wedgewood at the prices set forth in the partnership agreement from the inception of the project because builders could not build and sell for a profit at those prices.  Casalino's construction company was willing to purchase and build the lots in order to create momentum.  

Casalino confirmed attendance at a meeting with the Franz brothers in 1995 where he complained that the price of the lots was too high and that they were not able to sell to other builders unless the selling price was reduced to $40,000.  The Franz brothers agreed that there was difficulty in selling the lots.  Casalino believed that the Franz brothers orally consented to the sale of lots to Villas of Wedgewood for $40,000 and for terms other than set forth in the partnership agreement.  However, he admitted that there was no written instrument authorizing the sale of lots to Villas of Wedgewood by the limited partnership.  Nevertheless, the Villas of Wedgewood purchased approximately 50 lots in 1995 for $40,000 each.   

In 1997, Calaco projected profits of the partnership at $1,238,249.16.  As of 1999, Calaco's termination plan for the partnership projected profits in the amount of $425,904.  As of the date of the evidentiary hearing, the only partnership assets were the remaining lots.  The partnership had a significant amount of debt outstanding.  It had to borrow funds to meet the scheduled payments to the limited partners for their land contribution.

The trial court granted plaintiff's motion for a preliminary injunction.  In making its ruling, the trial court indicated that plaintiff sustained his burden of proving a clearly ascertainable right in need of protection and a likelihood of success on the merits.  In the trial court's view, the evidence was undisputed that the Franz brothers did not agree in writing to the sale of lots to Villas of Wedgewood; that 50 lots were purchased by related entities for $40,000 without the written consent of the limited partners; and that plaintiff had made a 
prima
 
facie
 case that the sales were in breach of the partnership agreement. 

The trial court stated that plaintiff had shown irreparable harm and an absence of adequate legal remedies, based on the undisputed testimony that the only remaining assets of the partnership were the remaining unsold lots and that, without an injunction, plaintiff faced the possibility of an uncollectible judgment.  The trial court rejected defendants' argument that plaintiff had an adequate remedy at law in the form of money damages and no right to an injunction to ensure collection should plaintiff prevail on his complaint for breach of contract and breach of fiduciary duty.  The trial court granted plaintiff's motion and enjoined defendants from selling any of the remaining lots pending trial.  Defendants' request that plaintiff be required to post a bond was denied.

The trial court directed plaintiff to prepare an order for injunction.  Plaintiff's counsel forwarded the proposed order to the trial court and defendants' counsel for review.  Defendants' counsel was out of town and did not approve, reject, or consent to the order as prepared by plaintiff's counsel.  Unaware that defendants' counsel did not approve or consent to the order, the  trial court entered the order on August 4, 2000, as prepared by plaintiff's counsel.  The order read as follows:

"This cause coming to be hearing on plaintiff's motion for a preliminary injunction and expedited discovery, the court having received and reviewed said motions and all written briefs submitted by the parties, the court conducting an evidentiary hearing on the motion for a preliminary injunction with all parties present, witnesses being sworn in and testifying, documents offered into evidence, and oral arguments heard from counsel for plaintiff and defendants, and the court being otherwise duly advised, it is hereby ordered:

Plaintiff's motion for a preliminary injunction is granted and the defendants, CALACO DEVELOPMENT CORPORATION and NUNZIO CASALINO and defendants' agents and employees, and each and all of them, are enjoined from selling, conveying or otherwise transferring any residential lots located in the development commonly known as 'Wedgewood' located in the City of Crystal Lake, County of McHenry, Illinois, which is the subject matter of this lawsuit.

The order for preliminary injunction is granted immediately and without further notice.

The order for preliminary injunction is granted without bond."  

Defendants filed their notice of interlocutory appeal on September 1, 2000. They seek the dissolution of the preliminary injunction and assert that the order granting the injunction is deficient because it fails to include the reasons for its entry, as required by section 11-101 of the Code of Civil Procedure (735 ILCS 5/11--101 (West 1998)). They further assert that the trial court abused its discretion in granting the preliminary injunction.  

A preliminary injunction is a provisional remedy granted to preserve the status quo until the case can be decided on the merits.  
Buzz Barton & Associates, Inc. v. Giannone
, 108 Ill. 2d 373, 382 (1985).  Thus, its objective is not to determine controverted rights, controverted facts, or the merits of a case.  
Buzz Barton
, 108 Ill. 2d at 386.  Because a preliminary injunction is an extraordinary remedy, it should be granted only when the need is clear.   
Vasquez v. City of Woodstock
, 242 Ill. App. 3d 766, 771 (1993).  

To establish entitlement to preliminary injunctive relief, the plaintiff must demonstrate (1) a clearly ascertainable right that needs protection;  (2) irreparable harm without the protection of an injunction;  (3) no adequate remedy at law for plaintiff's injury;  and (4) a substantial likelihood of success on the merits in the underlying action.  
Vasquez
, 242 Ill. App. 3d at 771.  Once the plaintiff establishes these elements, the court must balance the equities to determine the relative inconvenience to the parties and whether the burden on the defendant should the injunction issue outweighs the burden on the plaintiff should it be denied.  
Shodeen v. Chicago Title & Trust Co.
, 162 Ill. App. 3d 667, 673 (1987).  The trial court has broad discretion in determining whether to grant a preliminary injunction.  
Lou Owen, Inc. v. Village of Schaumburg
, 279 Ill. App. 3d 976, 984 (1996). A reviewing court will reverse a trial court's order granting a preliminary injunction only when it constitutes an abuse of discretion.  
Lou Owen, Inc.
, 279 Ill. App. 3d at 984.  

We first address defendants' contention that the trial court abused its discretion in granting the preliminary injunction.  Defendants assert that the trial court's ruling constitutes an abuse of discretion because it prohibits the selling of additional lots in Wedgewood to protect plaintiff's monetary interest in the event he is successful on his complaint for breach of contract and breach of fiduciary duty.  Defendants claim that the trial court's ruling effectually amounts to a prejudgment attachment and that plaintiff has failed to establish the requisite elements of irreparable harm and an inadequate remedy at law.

Irreparable harm occurs only where the remedy at law is inadequate, meaning that monetary damages cannot adequately compensate the injury and the injury cannot be measured by pecuniary standards.  
Carriage Way Apartments v. Pojman
, 172 Ill. App. 3d 827, 839 (1988); 
Shodeen
, 162 Ill. App. 3d at 673-74, citing 
Best Coin-Op, Inc. v. Old Willow Falls Condominium Ass'n
, 120 Ill. App. 3d 830, 834 (1983).  A preliminary injunction should not be granted where damages caused by the alteration of the status quo pending a final decision on the merits can be compensated adequately by monetary damages calculable with a reasonable degree of certainty.  
Carriage Way
, 172 Ill. App. 3d at 839; 
Shodeen
, 162 Ill. App. 3d at 674.

Attachment is a remedy by which a party's property is secured and held to satisfy a debt that the other party hopes to prove.  735 ILCS 5/4--101 (West 1998); 
Bowman v. Dixon Theatre Renovation, Inc.
, 221 Ill. App. 3d 35, 40 (1991).  Section 4--101 of the  Code of Civil Procedure permits attachment in 11 specific circumstances.  735 ILCS 5/4--101 (West 1998).  The law does not provide for a process of equitable attachment.  Taking away the control of property by means of an injunction for the purpose of anticipating a judgment is abhorrent to the principles of equitable jurisdiction.  
Carriage Way
, 172 Ill. App. 3d at 838.  The only exception is when the claimant has an interest in specific funds held by the debtor.  
Kurti v. Silk Plants Etc. Franchise Systems, Inc.
, 200 Ill. App. 3d 605, 609-11 (1990). 

Plaintiff's complaint alleges breach of contract and breach of fiduciary duty by virtue of the sale of lots in Wedgewood without plaintiff's consent to parties affiliated with defendants.  In the prayer for relief, plaintiff seeks monetary damages, disgorgement of profits, and attorney fees.  The bystander's report from the hearing on the motion for a preliminary injunction indicates that plaintiff presented evidence of monetary loss due to the conveyance of lots.  Based on the bystander's report, the only evidence of harm to plaintiff resulting from defendants' transfer of lots was lost profit and the monetary loss resulting from the diversion of assets from the partnership, 

The fact that the controversy concerns the conveyance of land does not change the character of the complaint or the relief sought therein.  The limited partnership was formed for the purpose of developing real estate.  However, plaintiff's entitlement based on the partnership agreement is to profits in the partnership, not to an interest in real estate.  The complaint alleges financial injury to plaintiff by defendant's conveyance of lots at a price less than set forth in the partnership agreement.  Because the only relief requested by plaintiff is monetary, injunctive relief is inappropriate and resembles a prejudgment attachment.  See 
Grower Service Corp. v. Brown
, 204 Ill. App. 3d 532, 535 (1990).  

In our view, the trial court abused its discretion in granting the injunction.  The bystander's report provides support for this conclusion.  At the evidentiary hearing, the trial court rejected defendants' contention that plaintiff had an adequate remedy at law in the form of money damages and no right to an injunction to preserve assets to ensure the collection of the judgment in the complaint for breach of contract. The trial court's finding that plaintiff showed irreparable harm and an absence of legal remedies based on evidence that the sole remaining partnership asset was the unsold lots illustrates its intent to preserve the unsold lots for the purpose of retaining the property as an asset to be used for the satisfaction of a judgment in plaintiff's favor.  The injury plaintiff complains of, breach of contract and breach of fiduciary duty, is capable of being measured and corrected by an award of money damages.  See 
Shodeen
, 162 Ill. App. 3d at 674.  Therefore, plaintiff clearly has an adequate remedy at law.  By halting the sale of further lots, the trial court effectively placed a lien on the real estate in the form of a prejudgment attachment.  The trial court abused its discretion in granting the preliminary injunction.

Due to our determination on this issue, it is unnecessary to address whether the preliminary injunction must be reversed because the trial court failed to include the reasons for its entry in the order.  

The judgment of the circuit court of McHenry County is reversed.

Reversed.

GROMETER and BYRNE, JJ., concur.